FILED
MARY L. SWAIN
BUTLER COUNTY
CLERK OF COURTS
02/25/2021 09:34 AM
CV 2021 02 0273

**IN THE COURT OF COMMON PLEAS**
**BUTLER COUNTY, OHIO**

NELL HATFIELD )    CASE NO.
132 Choctaw Circle )
Franklin, OH 45005 )    JUDGE:
)
               Plaintiff, )
)
         v. )    **COMPLAINT FOR DAMAGES**
)    **AND INJUNCTIVE RELIEF**
ELC BEAUTY, LLC )
d/b/a ESTEE LAUDER )    **JURY DEMAND ENDORSED**
Attn: Legal Dept. )    **HEREIN**
400 Premium Outlets Drive, Suite 624 )
Monroe, OH 45050 )
)
    **Serve also**: )
    ELC BEAUTY, LLC )
    d/b/a ESTEE LAUDER )
    c/o Corp. Service Co. (Stat. Agent) )
    50 West Broad Street, Suite 1330 )
    Columbus, OH 43215 )
)
    -and- )
)
    ELC BEAUTY, LLC )
    d/b/a ESTEE LAUDER )
    c/o Legal Department )
    125 Pinelawn Rd. )
    Melville, NY 11747 )
)
              Defendant. )
)

Plaintiff Nell Hatfield, by and through undersigned counsel, as her Complaint against the

Defendant, states and avers the following:

**PARTIES, JURISDICTION, & VENUE**

1. Hatfield is a resident of the city of Franklin, Warren County, state of Ohio.

2. Defendant ELC BEAUTY, LLC d/b/a Estee Lauder ("Estee Lauder") is a foreign

corporation that conducts business within the state. The events that give rise to the claims

for relief in this Complaint occurred at Estee Lauder's location at the Cincinnati Premium Outlets, 400 Premium Outlets Drive, Suite 624, Monroe, OH 45050.

3. Estee Lauder is, and was at all times hereinafter mentioned, Hatfield's employer within the meaning of and R.C. § 4112.01(A)(2).

4. Therefore, personal jurisdiction is proper over Defendant pursuant to Ohio Revised Code §2307.382(A)(1), (3) and/or (4).

5. Venue is proper pursuant to Civ. R. 3(C)(1), (2), (3), and/or (6).

6. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

7. Hatfield is a former employee of Estee Lauder.

8. At all times noted herein, Hatfield was fully qualified for and could fully perform the essential functions of her job.

9. Hatfield worked for Estee Lauder as a Store Lead from July 2013, until Estee Lauder terminated Hatfield's employment on or about September 30, 2020.

10. Hatfield is 71 years old, placing her in a protected class for her age.

11. Hatfield's early employment with Estee Lauder went without significant issue.

12. In March 2020, Hatfield's location was forced to close due to COVID-19.

13. In or around May 2020, Hatfield's location reopened.

14. Despite her status as high-risk with regards to the COVID-19 virus, Hatfield overcame her apprehension and returned to work as instructed.

15. The policy for reopening Estee Lauder stores in May 2020 was that all employees (but not customers) had to wear face masks during their shifts.

16. By the end of Hatfield's first shift, she was experiencing extreme congestion and coughing attacks.

17. Fearful for her health, Hatfield went to see her primary care physician who explained that she may be developing a condition that would make it very difficult for her to wear a mask for long periods of time.

18. Hatfield's doctor recommended that she speak with her supervisors about alternative personal protective equipment ("PPE").

19. Hatfield reached out to her supervisor, Jennifer Rice, and relayed this information from her doctor. This constituted notice of Hatfield's disabilities to the company.

20. Rice then had Hatfield reach out to T.J. Crawford, regional HR representative.

21. Hatfield volunteered to keep coming into work without a mask, but the offer was rejected.

22. Hatfield then tried to recommend face shields as a reasonable accommodation, but this suggestion was also rejected.

23. By the end of the conversation, all of Hatfield's attempts to secure approval for alternative PPE and her other safety suggestions had been rejected, and Estee Lauder had not made any attempts to accommodate her. This was a refusal to engage in the interactive process of finding her a reasonable accommodation.

24. On or around June 9, 2020, Hatfield noticed that her job position had been posted open on job websites.

25. Hatfield spoke with her supervisor Rice, but she never mentioned that Estee Lauder was considering replacing Hatfield.

26. On or around July 24, 2020, Hatfield was suddenly removed from her supervisor's WhatsApp message group.

27. Finally, on or around September 2, 2020, Hatfield received a call explaining that her position was being filled.

28. During the call, Hatfield was told that she would be furloughed through the end of the month (September 2020), and the official separation would occur on September 30, 2020.

29. Distressed, Hatfield reached back out to Crawford who explained that she was no longer the store lead, that the decision had been made based on his previous conversation with her regarding alternative face-covering accommodations and her other safety suggestions, and that this decision did not require prior notification, ultimatum, or warning.

30. In March 2020, Ohio Governor Mike DeWine issued a Stay-At-Home order and mask mandate in order to combat the COVID-19 virus that was sweeping across the nation.

31. DeWine's mask mandate did not apply to individuals with medical conditions related to respiratory concerns that would be exacerbated by wearing a mask.

32. This exception was and is also echoed by the Centers for Disease Control and Prevention ("CDC").

33. As explained *supra*, Hatfield developed a medical condition diagnosed by her primary healthcare provider that made it unsafe for her to wear a mask for long periods of time. This placed Hatfield in a protected class for her disability or, alternatively, caused Defendant to perceive her as disabled.

34. Hatfield notified Estee Lauder of this condition by and through her supervisor Rice.

35. Hatfield's subsequent termination cited her inability to come to work as the rationale, but as Estee Lauder was aware, the reason that Hatfield could not come into work was her medical condition preventing her from wearing a mask for long periods of time and Estee Lauder's failure to accommodate her.

36. Hatfield is a 71-year-old woman, placing her in a protected class for her age.

37. When Hatfield's employment was terminated for not being able to wear a mask for long periods of time, she was also aware that other Estee Lauder employees were being fired for similar reasons.

38. Upon information and belief, Estee Lauder terminated numerous employees' employment at this time. All of those terminated at Hatfield's store were over age 65.

39. Defendant's termination of Hatfield was an adverse employment action against her.

40. Defendant's purported reason for (or lack thereof) Hatfield's termination is pretextual.

41. Defendant actually terminated Hatfield's employment discriminatorily against her actual and/or perceived disabilities and age, to avoid engaging her in the interactive process of finding a reasonable accommodation, and/or to in retaliation against her desires to have a reasonably safe working environment related to the pandemic.

42. As a result of Defendant's acts and omissions above, Hatfield has suffered damages.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. §4112, et seq.

43. Hatfield restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

44. Due to her health issues described *supra*, Hatfield was disabled within the meaning of R.C. § 4112.02.

45. Estee Lauder was aware Hatfield was disabled under R.C. § 4112.02.

46. In the alternative, due to Hatfield's various health issues described herein, Estee Lauder perceived Hatfield as disabled under R.C. § 4112.02.

47. Hatfield's disabilities substantially impaired one or more major life activities under R.C. § 4112.02.

48. Despite her disabling conditions, Hatfield was still able to perform the essential functions of her job, with or without a reasonable accommodation.

49. R.C. § 4112.02 provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disability.

50. Estee Lauder's termination of Hatfield was an adverse employment action against her.

51. Estee Lauder's purported reason (or lack thereof) for Hatfield's termination was pretextual.

52. Estee Lauder actually terminated Hatfield's employment due to her actual or perceived disabilities.

53. Estee Lauder violated R.C. § 4112.02 by terminating Hatfield's employment because of her actual and/or perceived disabilities.

54. As a direct and proximate cause of Defendant's conduct, Hatfield has suffered and will continue to suffer damages.

## COUNT II: FAILURE TO ACCOMMODATE

55. Hatfield restates each and every prior paragraph of this complaint, as if it were fully restated herein.

56. Hatfield informed Defendant of her disabling condition.

57. Hatfield requested accommodations from Defendant to assist with her disabilities.

58. Hatfield's requested accommodations were reasonable.

59. There was an available accommodation that would have been effective and would have not posed an undue hardship to Defendant.

60. Defendant failed to engage in the interactive process of determining whether Hatfield needed an accommodation.

61. Defendant failed to provide an accommodation.

62. Defendant violated R.C. §4112.02 by failing to engage Hatfield in the interactive process.

63. Defendant violated R.C. §4112.02 by failing to provide Hatfield a reasonable accommodation.

64. As a direct and proximate result of Defendant's conduct, Hatfield suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT III: AGE DISCRIMINATION IN VIOLATION OF R.C. §4112, et seq.

65. Hatfield restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

66. Hatfield is in a protected class for her age (discussed *supra*).

67. R.C. § 4112 et seq. provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's age.

68. Defendant treated Hatfield differently than other similarly situated employees based upon her age.

69. Defendant replaced Hatfield with someone outside her protected age class, upon information and belief.

70. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by treating Hatfield differently from other similarly situated employees outside her protected class.

71. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying its employment policies in a disparate manner based on Hatfield's age.

72. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying its disciplinary policies in a disparate manner based on Hatfield's age.

73. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by terminating Hatfield's employment because of her age.

74. Defendant's termination of Hatfield's employment was an adverse employment action against her.

75. Defendant's proffered reason for (or lack thereof) Hatfield's termination was pretextual.

76. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by terminating Hatfield's employment because of her age.

77. Hatfield incurred emotional distress damages as a result of Defendant's conduct described herein.

78. As a direct and proximate result of Defendant's acts and omissions, Hatfield has suffered and will continue to suffer damages.

## COUNT IV: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

79. Hatfield restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

80. A clear public policy exists and is manifested in Ohio statutes, including R.C. § 4101.11 and/or § 4101.12, and/or administrative regulations, or in the common law, in favor of providing workers with a healthy and safe work environment, and against terminating an employee based on complaints of unsafe working conditions.

81. As set forth above, Hatfield repeatedly made oral and written reports to Defendant not only about her disparate treatment, but also about the unethical, unlawful, and/or policy-violating behavior that was going on there, including, but not limited to, unsafe working conditions caused by COVID-19, lack of PPE from Defendant, and a refusal to allow her to work with alternative PPE related to the pandemic.

82. Defendant's termination of Hatfield's employment jeopardizes these public policies.

83. Defendant's termination of Hatfield's employment was motivated by conduct related to these public policies.

84. Defendant had no overriding business justification for terminating Hatfield's employment.

85. As a direct and proximate result of Defendant's conduct, Hatfield suffered and will continue to suffer damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Hatfield demands from Defendant the following:

a) Issue a permanent injunction:

    i.    Requiring Defendant to abolish discrimination, harassment, and retaliation;

    ii.    Requiring allocation of significant funding and trained staff to implement all changes within two years;

    iii.    Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

    iv.    Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    v.    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge Plaintiff's personnel file of all negative documentation;

c) An award against Defendant for compensatory and monetary damages to compensate Plaintiff for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Plaintiff's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Matthew G. Bruce, Esq.*
Matthew Bruce (0083769)
    Trial Attorney
Evan R. McFarland (0096953)
THE SPITZ LAW FIRM
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, Ohio 45246
Phone: (216) 291-0244 x173
Fax:   (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com

*Attorneys for Plaintiff Nell Hatfield*

## JURY DEMAND

Plaintiff Nell Hatfield demands a trial by jury by the maximum number of jurors permitted.

*/s/ Matthew G. Bruce, Esq.*
Matthew Bruce (0083769)